UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GILBERT M. GOLDMAN, JR.                    CIVIL ACTION

VERSUS                                     NO: 03-0759

HARTFORD LIFE AND ACCIDENT                 SECTION "R" (5)
INSURANCE COMPANY


**ORDER AND REASONS**

This is an action for review of the denial of long-term disability benefits under an employee disability benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.*  Plaintiff Gilbert Goldman now moves for summary judgment and defendant Hartford Life and Accident Company moves to strike Goldman's pleadings and to impose sanctions.  For the reasons stated below, the Court DENIES Goldman's motion for summary judgment and DENIES Hartford's motion to strike and for sanctions.


**I.    BACKGROUND**

Gilbert Goldman is a former employee of Baroid, a division of the Halliburton Company.  On March 23, 2001, Goldman injured

his head, arm and neck while he worked as a mud engineer on an offshore drilling rig.  This action stems from Goldman's attempts to collect long-term disability benefits as a result of this accident.

### A.   The Plan

Goldman's claims in this case arise under the Halliburton long-term disability insurance plan.  (*See* Admin. Rec. at H-1792-H-1832).  Defendant Hartford Life and Accident Insurance Company insures the plan and also makes benefit determinations under the plan.  (*See* Admin. Rec. at H-1821 ("The Hartford reserves the right to determine if your proof of loss is satisfactory.")).  An employee is eligible for benefits under the plan if he has a "disability," as that term is defined by the plan.  The plan provides two definitions of disability.  During the 180-day "Elimination Period"[1] and the next two years, a "disability" is an injury or illness that prevents the employee from performing an essential duty of his occupation and causes him to suffer a decline in earnings.  (*See* Admin. Rec. at H-1801).  At the end of that time period, the definition of disability changes to mean an injury or illness that prevents the employee from performing an essential duty of *any* occupation for which he is qualified that

---

[1]The Elimination Period is the amount of time for which a covered person must be disabled before benefits are payable. (*See* Admin. Rec. at H-1798, H-1499).

provides the potential to make more than 60% of his pre-disability earnings.  (*See* Admin. Rec. at H-1801).  Benefits under the plan are equal to 60% of lost income for the first three years of disability and are reduced to 30% of lost income thereafter.  (*See* Admin. Rec. at H-1797-H-1798).

To make a claim for benefits under the plan, an employee must provide Hartford with written notice of disability and proof of loss establishing the disability.  (*See* Admin. Rec. at H-1820-H-1821).  If Hartford denies the claim, the plan requires Hartford to provide the claimant with written notice of the decision, including the specific reasons for the denial, the specific policy provisions on which the denial is based, a description of any additional information necessary for processing the claim, and an explanation of the claims appeal procedure.  (*See* Admin. Rec. at H-1821).

Once Hartford denies a claim, the claimant may appeal the decision for a full and fair review of the claim.  (*See* Admin. Rec. at H-1822).  The plan provides that appeals will be decided within 60 days under most circumstances and within 120 days in all cases.  (*See* Admin. Rec. at H-1822).

**B.   Procedural History**

On February 3, 2003, Goldman sued Hartford in Louisiana state court for long-term disability benefits under the plan.

3

Hartford removed the action to this Court in March 2003 on the ground that this Court had jurisdiction over Goldman's claims under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* Around the time that Hartford removed Goldman's action to this Court, Goldman applied with Hartford for long-term disability benefits under the plan. The Court stayed this action in order to allow the parties to complete the administrative review process on Goldman's claims. Hartford ultimately denied Goldman's claim on the ground that he was not a covered employee eligible for benefits under the plan.

On October 27, 2004, this Court found that Hartford had abused its discretion in determining that Goldman was not covered by the plan. The Court determined that Goldman was, in fact, a covered employee and remanded the matter to Hartford for a determination of whether Goldman was entitled to benefits under the terms of the plan. (*See* Rec. Doc. 129).

On November 30, 2004, Hartford informed Goldman that it needed additional information in order to evaluate his reopened claim for benefits. (*See* Admin. Rec. at H-1131-H-1134). On December 21, 2004 and January 28, 2005, Hartford again requested additional information from Goldman. (*See* Admin. Rec. at H-1119-H-1120, H-1114-H-1115). On March 10, 2005, Hartford denied Goldman's claim for benefits on the ground that Goldman had failed to provide it with sufficient proof of loss in a timely

4

manner.  (*See* Admin. Rec. at H-1107-H-1113).  In its March 10, 2005 letter, Hartford provided Goldman with a detailed list of the information that it still needed from him in order to determine his eligibility for benefits under the plan.  (*See* Admin. Rec. at H-1110-H-1112).  Hartford also informed Goldman that he had the right to administratively appeal Hartford's decision.  (*See* Admin. Rec. at H-1112).

After Hartford denied his claim, Goldman did not appeal administratively, but instead moved in this Court for a judgment determining that Hartford owed him benefits.  (*See* Rec. Docs. 131-36).  The Court denied Goldman's motion because his first case was closed and the matter was still before Hartford. (*See* Rec. Doc. 139).  Goldman moved for reconsideration of the Court's April 5, 2005 order, and the Court denied his motion.  (*See* Rec. Doc. 145).  The Court again explained that its October 27, 2004 decision that Goldman was covered under the plan did not establish that he was entitled to benefits under the plan.  The Court stated that this action was closed and that Goldman could file a new civil action in this Court if, after exhausting his administrative remedies with Hartford, he remained dissatisfied with Hartford's disposition of his claim. Goldman filed a second motion for reconsideration, which the Court denied.  (*See* Rec. Doc. 154).  The Court reiterated that the action was closed and warned Goldman's counsel that additional filings of this nature

5

could subject him to sanctions.

Goldman appealed Hartford's decision to deny his claim for benefits by letter dated May 2, 2005. (*See* Admin. Rec. at H-1639).  On June 14, 2005, Hartford informed Goldman that it needed additional time to render a decision on his May 2, 2005 appeal and that a decision would be made no later than July 31, 2005. (*See* Admin. Rec. at H-1787-H-1789).  On July 20, 2005, Hartford rendered a decision on Goldman's appeal. (*See* Admin. Rec. at H-1639-H-1643;[2] Rec. Doc. 158 Ex. 2).  Hartford determined that Goldman was eligible for long-term disability benefits for the period September 20, 2001 (the end of the Elimination Period under the plan) through September 19, 2003. (*See* Admin. Rec. at H-1639).  Hartford denied Goldman's claim for benefits after September 19, 2003 because it found that there was insufficient evidence in the record to establish that Goldman qualified as disabled under the plan after September 19, 2003. Hartford pointed to medical evidence indicating that Goldman was capable of performing essentially light duty work, which would mean that he would not qualify as disabled under the definition of disability that applied after September 19, 2003. (*See* Admin. Rec. at H-1642-H-1643; Rec. Doc. 158 Ex. 2).  Hartford's July 20,

---

[2]The copy of Hartford's July 20, 2005 letter included in the administrative record appears to be missing page five.  A complete copy of this letter is included as Exhibit 2 to Goldman's motion for summary judgment. (*See* Rec. Doc. 158 Ex. 2).

2005 letter again advised Goldman of his right to administratively appeal its benefits decision. (*See* Admin. Rec. at H-1643 ("[ERISA] gives you the right to appeal our decision and receive a full and fair review.  You may appeal our decision even if you do not have new information to send us.")).

On July 26, 2005, Goldman appealed Hartford's determination that he was not entitled to benefits after September 19, 2003. (*See* Admin. Rec. at H-1579).  Hartford acknowledged receipt of Goldman's appeal on July 28, 2005 and informed Goldman that it had 45 days in which to decide his appeal, and up to 90 days under special circumstances. (*See* Admin. Rec. at H-1576).  The parties exchanged a number of letters from late July 2005 through September 2005, but that correspondence related primarily to the amount of benefits to which Goldman was entitled for the period September 20, 2001 through September 19, 2003, not to his July 26, 2005 appeal. (*See* Admin. Rec. at H-1574-H-1575, H-1587, H-1591, H-1594, H-1596, H-1598-H-1600, H-1619, H-1628-H-1629).  The Court's review of the administrative record indicates that Hartford never informed Goldman that it would need additional time to process his July 26, 2005 appeal and never informed Goldman that it had made a decision on that appeal.

Goldman commenced this action on September 22, 2005 by filing a new complaint under this docket number. (*See* Rec. Doc. 157).  Goldman's new complaint alleges both that Hartford did not

7

provide him with the full amount of benefits to which he is
entitled for the period September 20, 2001 through September
19, 2003 and that Hartford never made a decision on his July 26, 2005
appeal concerning the denial of benefits after September 19,
2003.  Goldman moved for summary judgment on these claims,
seeking benefits owed from September 20, 2001 through the
present, as well as penalties and attorney's fees.  Hartford
moved to strike Goldman's pleadings and to impose sanctions for
violation of the Court's order that Goldman cease filing
pleadings in this case.  Goldman thereafter moved to voluntarily
dismiss his claim for benefits for the period September 20, 2001
through September 19, 2003.  The Court granted that motion.
Accordingly, only Goldman's claim for benefits after September
19, 2003 remains before the Court.

## II.  HARTFORD'S MOTION TO STRIKE AND FOR SANCTIONS

A district court has the inherent power to impose sanctions
on a litigant to enforce compliance with its orders.  *See, e.g.*,
*Rousseau v. 3 Eagles Aviation, Inc.*, 130 Fed. Appx. 687, 690 (5th
Cir. 2005) (noting district court's inherent power to sanction
"'to enforce compliance with an order of the court or to
compensate for losses or damages sustained by reason of
noncompliance'") (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d
270, 272 (5th Cir. 1977)).  This inherent power includes the

authority to strike a litigant's pleadings or dismiss a case for failure to comply with the court's orders. *See Smith v. Legg (In re United Mkts. Int'l, Inc.)*, 24 F.3d 650, 654 (5th Cir. 1994). This authority should be invoked only in extreme cases, however, and it must be used with great restraint. *See Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952-53 (5th Cir. 2001).

Here, Hartford moves to strike Goldman's new complaint and impose sanctions because this Court repeatedly warned Goldman and his counsel that this matter was closed. There can be no doubt that Goldman's most recent filings are in violation the Court's earlier orders. Although the Court informed Goldman that, once he completed the administrative appeals process, he could file a *new* civil action for benefits, the Court clearly stated that Goldman was to file no more pleadings in this action. (*See* Rec. Doc. 145, at 3 ("Once Goldman appeals Hartford's determination and Hartford rules on his appeal, Goldman may *file a new civil action* in this Court to challenge Hartford's determination." (emphasis added)); Rec. Doc. 154, at 3 ("As this Court has stated twice before, this case is closed. . . . The Court warns Goldman's counsel that further filings in this action may subject him to sanctions.")).

Nonetheless, the Court finds that no sanction is appropriate in this case. First, the Court's earlier orders were directed more at Goldman's failure to exhaust his administrative remedies

than to how Goldman brought his claims in this Court once he had exhausted his remedies with Hartford.  Goldman exhausted his administrative remedies with Hartford before filing his new complaint.  Although his recent filings are procedurally flawed, Goldman currently has the right to proceed in court against Hartford for the benefits to which he believes he is entitled. Accordingly, Hartford has not been prejudiced by having to respond to Goldman's new complaint.  Second, despite the clarity with which the Court instructed Goldman and his counsel that this action was closed, the Court finds no evidence to suggest that Goldman's filings were made in bad faith.  Moreover, any new case that Goldman filed in this Court concerning his claim for benefits would in all likelihood have been assigned to this section as a related case under Local Rule 3.1.1E.  The Court will therefore deny Hartford's motion to strike and to impose sanctions.

**III. GOLDMAN'S MOTION FOR SUMMARY JUDGMENT**

     **A.   Summary Judgment Standard**

Summary judgment is appropriate only when the pleadings and summary judgment evidence establish that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party has the burden of showing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See id*. at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**B.   Standard of Review - ERISA Claims**

11

Under ERISA, an administrator or fiduciary of a covered plan must make two general types of determinations in order to determine whether a claimant is entitled to benefits under the plan. *See Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir. 1998) (citing *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1557 (5th Cir. 1991)).  It must first determine the facts underlying the claim for benefits.  *Id.* (citing *Pierre*, 932 F.2d at 1562).  The administrator or fiduciary must then "determine whether those facts constitute a claim to be honored under the *terms* of the plan." *Id.* (emphasis in original).  If the administrator or fiduciary denies benefits to the participant, once the participant has exhausted his administrative remedies, he can bring a civil action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

Under the standard established in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), a fiduciary's decisions on plan terms and eligibility for benefits under the plan are subject to *de novo* review in the district court "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe

the terms of the plan." *Id.* at 115.  If the plan grants such discretion, the administrator's determinations are reviewed only for abuse of discretion.  *See Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).  In the Fifth Circuit, a fiduciary's factual determinations are always reviewed for abuse of discretion, irrespective of whether the fiduciary is granted discretion under the plan.  *See id.* (citing *Pierre*, 932 F.2d at 1562).

As this Court has previously determined, the plan provides Hartford with discretion to interpret the plan and to determine eligibility for benefits.  (*See* Rec. Doc. 129, at 14; Admin. Rec. at H-1797 ("Final interpretation of all provisions and coverages will be governed by the Group Insurance Policy on file with The Hartford at its home office."); Admin. Rec. at H-1821 ("The Hartford reserves the right to determine if your proof of loss is satisfactory.")).

Goldman argues that Hartford's benefits determination should be subject to *de novo* review because Halliburton, not Hartford, is named as the Plan Administrator, and it therefore exercises discretion under the plan.  (*See* Admin. Rec. at H-1825).  This argument is without merit.  Although it is true that Halliburton is named as the Plan Administrator under the plan, nothing in the plan gives Halliburton any responsibility or discretion to

interpret the provisions of the plan or to determine an individual's eligibility for benefits.  Morever, that Hartford is not itself designated as the Plan Administrator does not establish that it is not vested with discretion under the plan. Under *Bruch*, review under the abuse of discretion standard is not limited exclusively to plan administrators.  Rather, the abuse of discretion standard is appropriately used to review the decisions of any "administrator *or fiduciary*" with "discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Bruch*, 489 U.S. at 115 (emphasis added); *see also* 29 U.S.C. § 1002(21) ("[A] person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan.").  Thus, the focus of the *Bruch* test is not on the formal title of the decision-maker, but instead on whether the plan at issue confers discretion upon the decision-maker for the particular type of decision in question.  Here, the Halliburton long-term disability plan provides in no uncertain terms that Hartford, not Halliburton, is to administer claims for benefits, and, as noted *supra*, the plan confers discretion on Hartford in making those determinations.  Accordingly, Hartford's decisions with respect to a plan participant's eligibility for benefits should ordinarily be reviewed only for abuse of discretion.

14

Because Hartford both determines eligibility for benefits under the plan and insures the plan, however, it necessarily operates under a potential conflict of interest, because it has a financial stake in the outcome of its benefits determinations. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999). The Court considers the existence of a conflict of interest as a factor in determining whether a fiduciary has abused its discretion. *Id.* at 295-97. Courts in the Fifth Circuit apply a "sliding scale" approach to determine the extent to which a conflict of interest need be considered. *Id.* at 297 ("The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."). Here, Goldman has introduced no evidence on the extent of Hartford's conflict of interest. As a result, the Court concludes that this conflict requires that Hartford's decision be granted "only a modicum less deference" than it would otherwise receive. *Id.* at 301.

**C.   Standard of Review - "Deemed Denials"**

Goldman also argues that Hartford's decision should be subject to *de novo* review because Hartford never responded to his

15

July 26, 2005 appeal.[3]  Goldman asserts that any deference that
might ordinarily be due Hartford's determinations is unwarranted
because Hartford has simply failed to exercise the discretion
granted it under the plan.

Under regulations promulgated by the Secretary of Labor
pursuant to section 503 of ERISA,[4] a plan administrator or
fiduciary responsible for deciding benefits claims under a
disability plan must ordinarily make a decision on a claim within
45 days after the claim is received by the plan.  *See* 29 C.F.R. §
2560.503-1(f)(3) (2005).[5]  Under certain circumstances, this 45-
day period may be extended for up to an additional 60 days.  *Id.*
This time period is tolled for delays caused by the claimant's
failure to provide information necessary to decide his claim.
*Id.* § 2560.503-1(f)(4).  In the event of an adverse benefits

---

[3]At one point in his brief, Goldman appears to argue that
Hartford's failure to decide his July 26, 2005 appeal precludes
it from contesting his right to the benefits sought in that
appeal.  Because an ERISA fiduciary's procedural violations do
not generally give rise to a substantive remedy, this argument is
without merit.  *See, e.g., Syed v. Hercules Inc.*, 214 F.3d 155,
162 (3d Cir. 2000).

[4]*See* 29 U.S.C. § 1133 ("In accordance with regulations of
the Secretary, every employee benefit plan shall . . . afford a
reasonable opportunity to any participant whose claim for
benefits has been denied for a full and fair review by the
appropriate named fiduciary of the decision denying the claim.").

[5]Unless otherwise noted, all citations to the Code of
Federal Regulations are to the 2005 edition.

determination, the claimant must be given at least 180 days in which to appeal the decision administratively.  *Id.* § 2560.503-1(h)(3)(i), (h)(4).  Once received, an appeal must be decided within 45 days, or, if special circumstances require and if notice is provided to the claimant, within 90 days, of the date on which the appeal is received.  *Id.* § 2560.503-1(i)(3).  As with an initial benefits determination, this time period is tolled during periods of delay caused by the claimant's failure to respond to a request for additional information necessary to determine the appeal.  *Id.* § 2560.503-1(i)(4).  If, at any stage of a plan's administrative process, the plan fails to abide by these time limitations, the claimant may abandon the administrative process and bring an action in court.  *Id.* § 2560.503-1(l).

In this case, Hartford did not timely decide Goldman's July 26, 2005 appeal.  Hartford acknowledged receipt of the appeal on July 28, 2005 and stated that it had 45 days, or in special circumstances 90 days, in which to render a decision.[6]  (*See* Admin. Rec. at H-1576).  Thus, assuming that Hartford first

---

[6]Although the terms of the plan give Hartford up to 120 days to decide an appeal under certain circumstances, Hartford does not dispute that appeals under the plan are governed by the shorter time limitations of 29 C.F.R. § 2560.503-1.  (*See* Rec. Doc. 174, at 4-5).

17

received Goldman's appeal on July 28, 2005, it was required to
either to decide his claim or notify him that additional time was
necessary no later than September 11, 2005.  As noted *supra*,
however, Hartford neither issued a decision on Goldman's July 26
appeal nor notified him that additional time was necessary.
Goldman filed his petition for damages on September 22, 2005,
eleven days after the 45-day period expired.  Because Hartford
failed to decide Goldman's July 26 appeal within the time limits
provided by 29 C.F.R. § 2560.503-1, Goldman is deemed to have
exhausted his administrative remedies.

    Hartford asserts, in passing, that the deadline for
determining Goldman's appeal should be tolled because Goldman did
not provide Hartford with any additional information on appeal.
The Court notes, however, that Hartford informed Goldman that he
could appeal its decision even if he did not have additional
information to submit.  (*See* Admin. Rec. at H-1643).  Moreover,
there is nothing in the record to suggest that Hartford ever
informed Goldman that it required additional information in order
to decide his appeal.  On these facts, the tolling provision of
29 C.F.R. § 2560.503-1(i)(4) has no application, and Goldman's
claim is properly before the Court.[7]

_____

    [7]In addition, although neither party raises the issue, it is
far from clear that Goldman was even required under the plan to

The more difficult question is whether Hartford's failure to render a timely decision on Goldman's July 26 appeal affects the standard under which this Court must review Goldman's claim.

Goldman argues that Hartford's denial of his claim should be reviewed *de novo*.  Goldman relies heavily on *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003).  In *Gilbertson*, the Tenth Circuit held that when a claim under an ERISA plan is "deemed denied" because of the administrator's failure to comply with the regulatory deadlines for determining claims, "the district court must review the denial *de novo*, even if the plan administrator has discretionary authority to decide claims."  *Id.* at 631.

Hartford argues that the abuse of discretion standard should apply even though it made no decision on Goldman's July 26 appeal because, under Fifth Circuit law, a fiduciary's failure to render a timely decision does not alter the standard under which the district court reviews the fiduciary's decision.  Hartford also

_____

appeal the July 20, 2005 decision to Hartford.  Hartford first denied Goldman's claim on March 10, 2005.  Goldman appealed that decision, and Hartford's July 20, 2005 decision disposed of that appeal.  Goldman's July 26, 2005 appeal was therefore his second appeal.  The plan itself, however, provides for only one level of appeal.  (*See* Admin. Rec. at H-1821-H-1822).  Accordingly, it would appear that Goldman had exhausted his administrative remedies after Hartford rendered its July 20, 2005 decision on his claim.

19

asserts that *Gilbertson* is inapplicable because it was decided
under an old version of 29 C.F.R. § 2560.503-1, which does not
apply to this case.  Finally, Hartford argues that the abuse of
discretion standard is appropriate here in any event because
Hartford has "substantially complied" with the applicable federal
regulations.

As an initial matter, Hartford is correct that *Gilbertson* is
not directly applicable to this case because that case involved
an earlier version of the Department of Labor's regulation
concerning the ERISA administrative review process.  It is less
clear, however, whether this distinction actually supports
Hartford's argument.  This follows because the Fifth Circuit case
upon which Hartford relies, *Southern Farm Bureau Life Insurance
Co. v. Moore*, 993 F.2d 98 (5th Cir. 1993), was also decided under
the earlier version of section 2560.503-1.

### 1.   *The Old Regulation*

Under the former version of section 2560.503-1, which
applies to all cases concerning benefits claims filed before
January 1, 2002,[8] if a plan administrator or fiduciary fails to

---

[8]The final version of the most recent amendments to 29
C.F.R. § 2560.503-1 was published in the Federal Register on
November 21, 2000, but the amendments apply only to claims for
benefits that were commenced on or after January 1, 2002.  *See* 29
C.F.R. § 2560.503-1(o).

comply with the regulatory deadlines[9] for deciding a claim, the claim is "deemed denied" on review.  *See* 29 C.F.R. § 2560.503-1(h)(4) (1999) (amended Nov. 21, 2000) (stating that, if decision on review "is not furnished within [the appropriate] time, the claim shall be deemed denied on review").  Once a claim is "deemed denied" on review, the claimant can then file an action for benefits under ERISA section 502(a) in the district court.  *See Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 983 (9th Cir. 2005) ("[T]he 'deemed denied' language gives claimants the ability to access the courts if the administrator does not exercise its discretion within a reasonable time."); *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 105 (2d Cir. 2005) ("[I]f Prudential failed to meet the deadlines, Nichols's administrative appeal is deemed denied, and her administrative remedies are therefore exhausted.").

A number of courts of appeals hold that a deemed denial under the old regulation is simply the equivalent of a failure by the administrator to exercise any discretion.  As the application

---

[9]Under the old version of the regulation, an administrator of a disability plan was required to decide an appeal of a benefits determination within 60 days of receiving a request for review, or, if the claimant was notified that additional time was necessary, within 120 days of receiving a request for review. *See* 29 C.F.R. § 2560.503-1(h)(1) (1999).  As noted *supra*, the deadlines under the current regulation are 45 and 90 days, respectively.

of an abuse of discretion standard to an ERISA benefits
determination presupposes that the determination was the result
of an exercise of discretionary authority,[10] those courts hold
that a deemed denial is therefore presumptively not entitled to
judicial deference and is ordinarily subject to *de novo* review.
*See, e.g., Nichols*, 406 F.3d at 109 ("A 'deemed denied' claim is
not denied by any exercise of discretion, but by operation of law
. . . . We therefore hold that a 'deemed denied' claim is
entitled to de novo review . . . ."); *Jebian v. Hewlett-Packard
Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1103
(9th Cir. 2003) (when claim is deemed denied, "there is no
opportunity for the exercise of discretion and the denial is
usually to be reviewed *de novo*"); *Gilbertson*, 328 F.3d at 632
("Deference to the administrator's expertise is inapplicable
where the administrator has failed to apply his expertise to a
particular decision."); *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296
(3d Cir. 2002) ("Where a trustee fails to act or to exercise his
or her discretion, de novo review is appropriate because the
trustee has forfeited the privilege to apply his or her

---

[10]*See Bruch*, 489 U.S. at 111 ("Trust principles make a
deferential standard of review appropriate when a trustee
exercises discretionary powers."); *Pierre*, 932 F.2d at 1558
(deferential review appropriate for all factual findings because
such findings are "inherently discretionary").

discretion . . . .").

Several courts of appeals, including some of those that hold that deemed denied claims are ordinarily subject to *de novo* review, employ a somewhat flexible approach and hold that a deemed denial caused by an administrator's failure to render a timely decision can nonetheless be reviewed under the abuse of discretion standard if the specific facts and circumstances of the case indicate that the administrator's procedural errors did not compromise the overall integrity of the administrative review process.  For example, in *McGarrah v. Hartford Life Insurance Co.*, 234 F.3d 1026 (8th Cir. 2000), the Eighth Circuit held that abuse of discretion review was appropriate notwithstanding the administrator's violation of section 2560.503-1, when the violation did not "raise serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim."  *McGarrah*, 234 F.3d at 1031.  In that case, the plan's claims administrator issued a written decision that set forth specific reasons for its decision to terminate the claimant's benefits.  The claimant timely appealed the decision, but the administrator simply, and inexplicably, failed to respond to the appeal.  After noting that the administrator's failure to respond to the appeal was a "serious procedural irregularity," the court explained that the "mere presence of a procedural

irregularity is not enough to strip a plan administrator of the deferential standard of review." *Id.* The court ultimately held that abuse of discretion review was appropriate because the administrator's procedural violations did not undermine its confidence in the administrator's decision-making process. *Id.* In reaching this conclusion, the court found it significant both that the administrator had conducted an extensive investigation of the claim before rendering its initial decision and that the claimant had presented no credible new evidence with his appeal. *Id; see also Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1174-75 (10th Cir. 2004) (applying *McGarrah* exception to untimely benefits determination); *Gatti*, 415 F.3d at 985 (*de novo* review required only when procedural violations are "so flagrant as to alter the substantive relationship between the employer and employee").

Similarly, a number of courts recognize a "substantial compliance" exception to *de novo* review for cases in which the administrative review process contained technical, though insubstantial, procedural defects. *See Gilbertson*, 328 F.3d at 634-35 ("[O]ur holding does not require that every decision that comes on the 61st or 121st day following the claimant's notice of appeal must be subject to plenary review in federal court."); *see also Jebian*, 349 F.3d at 1107-08 (adopting substantial compliance

24

exception as recognized in *Gilbertson*).  *But cf. Nichols*, 406
F.3d at 109 (reserving decision on substantial compliance
exception).

The basic principle that emerges from these cases is that
these courts of appeals will not grant deference to an ERISA
administrator when its claims decisions are rendered suspect
because of material procedural violations, but that they will
assess the substantiality of the violations according to the
facts of each case.

The Fifth Circuit has been considered somewhat of an outlier
in this area.  It addressed the standard of review applicable to
deemed denied claims in *Moore*, which involved an employee's
efforts to obtain accidental death benefits for the death of her
husband under a plan administered by her employer.  *Moore*, 993
F.2d at 99.  The administrator in that case investigated the
employee's claim, and it ultimately concluded that the loss was
excluded by the terms of the policy.  *Id.* at 99-100.  The
administrator did not, however, formally notify the employee of
its decision, as it was required to do under the regulation.  *Id.*
at 100.  Instead, the administrator sought a declaratory judgment
in federal court that it did not have to pay benefits under the
plan.  *Id.*  Because the administrator had failed to provide the
employee with the requisite written notice of its decision to

deny her claim, the district court reviewed its factual determinations under a *de novo* standard of review.  *Id.* at 101.

On appeal of a jury verdict in favor of the employee, the administrator argued that the district court erred in failing to review its factual determinations for abuse of discretion.  The Fifth Circuit sided with the administrator and held that the administrator's findings of fact should have been reviewed for abuse of discretion.  The court first restated the general rule that, under its earlier decision in *Pierre*, an administrator's factual determinations are always reviewed for abuse of discretion.  *Id.* at 100-01.  The court then noted that the purpose of the "deemed denied" provision of section 2560.503-1 is to permit a claimant to bring an action in the district court when an ERISA administrator simply fails to decide a claim on the merits.  *Id.* at 101.  The *Moore* court went on to hold, however, that the administrator's failure to provide the employee with written notice of its decision did not affect the applicable standard of review:  "In our view, the standard of review is no different whether the claim is actually denied or deemed denied. The role of the district court is the same in either event . . . ." *Id.* (footnote omitted).  In a footnote, the court added that its conclusion was "buttressed by the fact that [the employee] cite[d] no authority for applying de novo review when a claim is

deemed denied." *Id.* at 101 n.6.

In part because the *Moore* court did not elaborate on the reasoning underlying its decision, the case has been viewed with some skepticism. No other circuit has adopted its holding, and the courts of appeals often interpret *Moore* as standing for the proposition that an administrator's failure to act on a claim is never reason for altering the standard of judicial review, putting the Fifth Circuit in conflict with those courts that employ a presumption of *de novo* review in deemed denied cases. *See Finley*, 379 F.3d at 1173 n.5; *Jebian*, 349 F.3d at 1106; *Gilbertson*, 328 F.3d at 633. At least one court has conjectured that *Moore* is grounded in the notion that a decision to simply let a claim lapse, resulting in a constructive denial, is no less an affirmative exercise of discretion than is a denial on the merits. *See Nichols*, 406 F.3d at 109 (describing *Moore* as "apparently reasoning that the decision to deny is the same whether accomplished formally or by inaction").

This Court is not convinced that *Moore* should be read so broadly. First, the Court notes that the *Moore* court did not provide a reasoned analysis for its decision, and, as the court itself noted, the decision was at least somewhat influenced by lack of authority for the proposition that *de novo* review should apply to deemed denials. More important, however, *Moore* was not

27

a case in which the administrator simply failed to act on a claim
and let it languish unresolved.  As the Fifth Circuit's opinion
makes clear, the administrator in that case conducted a full
investigation of the employee's claim, made factual
determinations about the cause of the loss, and decided that the
loss was excluded under the terms of the policy.  The procedural
breakdown in *Moore* was that, once the administrator decided to
deny the employee's claim, rather than sending the employee
written notice of the denial, the administrator sought a
declaratory judgment of non-liability.

    *Moore* is therefore a case in which the administrator
actually exercised its discretion and made factual findings
concerning the employee's claim, but simply failed to comply with
the regulation's notice procedures.  Moreover, notwithstanding
the administrator's failure to notify the employee of its
decision as required by the regulation, the employee no doubt
received actual notice of the administrator's reasoning in the
declaratory judgment action.  The question actually presented to
the Fifth Circuit was, therefore, whether to grant deference to
the factual findings that the administrator actually made during
its investigation, or whether *de novo* review was required because
of the administrator's procedural error.  The Fifth Circuit held
that, because the district court's task, reviewing the factual

determinations that the administrator made at the conclusion of its investigation, was the same whether or not the administrator complied with the regulation's notice requirement, there was no reason to alter the standard of judicial review.

Although some of the language in *Moore* can be read broadly to suggest that the Fifth Circuit would never apply a different standard of review to a claim that was deemed denied than it would to one that was actually decided on the merits, it is far from clear that *Moore* was intended as such a blanket pronouncement.  Rather, it appears that the Fifth Circuit simply determined that, on the record before it, nothing about the administrator's failure to comply with the regulation's notice requirement warranted withholding deference to the administrator's factual determinations.  Viewed in this manner, the decision is quite analogous to cases like *McGarrah* and *Finley*, which recognized exceptions to the presumption of *de novo* review of deemed denied claims when the administrator's procedural errors did not undermine the court's confidence in the administrator's overall decision-making process.  In addition, a more circumscribed interpretation of *Moore* is consistent with a later indication by the Fifth Circuit that it might, in fact, find *de novo* review appropriate when an administrator simply fails to decide a claim.  *See Schadler*, 147 F.3d at 398 n.11

("[I]t may be appropriate for a district court to undertake a de novo review of the denial where the administrator, despite repeated opportunities to do so, refuses to make a ruling . . . or where the administrator so delays in making a decision that such delay amounts to a failure to decide the issue."). Accordingly, the Court finds that *Moore* is not a clear pronouncement that an ERISA administrator's failure to decide a claim can never affect the applicable standard of review for deemed denied claims under the old regulation.  The Court instead concludes that the Fifth Circuit would decide whether a deemed denied claim should be reviewed *de novo* or for abuse of discretion based on a consideration of the record in the case before it.

### 2.   *The New Regulation*

Under the current version of section 2560.503-1, which applies to benefits claims filed on or after January 1, 2002, the "deemed denied" provision has been removed and replaced with the current paragraph (l), which provides:

> In the case of the failure of a plan to
> establish or follow claims procedures
> consistent with the requirements of this
> section, a claimant shall be deemed to have
> exhausted the administrative remedies
> available under the plan and shall be
> entitled to pursue any available remedies

> under section 502(a) of the Act on the basis
> that the plan has failed to provide a
> reasonable claims procedure that would yield
> a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l).  The issue the Court must consider is whether the foregoing amendment to section 2560.503-1 altered the applicable standard of review for cases in which an administrator or fiduciary fails to decide a benefits appeal on a timely basis.  If it did not, the Court will look to the record to determine whether Hartford's decision is entitled to deference.  If it did, the Court may be required to review Goldman's claim *de novo*.

This issue appears to be one of first impression in this circuit,[11] and the Court has found no appellate decisions addressing this issue.  *See Gatti*, 415 F.3d at 982 n.1 ("We do not address the question of whether, under the new regulation, claimants who can establish a failure to comply with the claims procedures established by ERISA regulations are entitled to *de novo* consideration of their claims."); *Finley*, 379 F.3d at 1175 n.6 ("We specifically reserve the question of whether this decision and our decision in *Gilbertson* apply to the regulations as amended.").  A small number of district court opinions have

---

[11]*But cf*. *Mouisset v. Hartford Life & Accident Ins. Co*., No. Civ.A. 03-2292, 2005 WL 3296847, at *3 (W.D. La. Dec. 5, 2005) (applying, without discussion, abuse of discretion standard under *Moore* when administrator failed to comply with amended regulation).

31

considered the issue, with conflicting results.  *Compare Reeves v. Unum Life Ins. Co. of Am.*, 376 F. Supp. 2d 1285, 1293-94 (W.D. Okla. 2005) (failure to comply with time limits of amended regulation mandates *de novo* review), *and Stefansson v. Equitable Life Assurance Soc'y of the United States*, No. 5:04CV40(DF), 2005 WL 2277486, at *11-12 (M.D. Ga. Sept. 19, 2005) (applying *de novo* review), *with Seger v. Reliastar Life*, No. 3:04 CV 16/RV/MD, 2005 WL 2249905, at *7-11 (N.D. Fla. Sept. 14, 2005) (abuse of discretion review appropriate when administrator substantially complied with new deadlines), *Ott v. Litton Indus., Inc.*, No. 4:04-CV-763, 2005 WL 1215958, at *6-7 (M.D. Pa. May 20, 2005) (removal of deemed denial provision does not mandate *de novo* review), *and Oman v. Intel Corp. Long Term Disability Benefit Plan*, No. 03-1591-AA, 2004 WL 2384965, at *4 (D. Or. Oct. 21, 2004) (applying substantial compliance doctrine under amended regulation).

It is not apparent either from the text of the amended regulation or from a comparison of the amended and former versions of the regulation that the November 2000 amendment requires *de novo* review when a plan administrator or fiduciary fails to render a decision within the appropriate timeframe. First, neither version of the regulation expressly purports to establish the applicable standard for judicial review of untimely

decisions.  Moreover, there appears to be little functional
difference between the "deemed denied" provision of the old
regulation and paragraph (l) of the new regulation.  Under both
the old and new versions, an administrator's failure to issue a
timely decision on a benefits appeal has the effect of permitting
the participant to forego any additional administrative
procedures and file a civil action against the administrator.
*See Stefansson*, 2005 WL 2277486, at *9 ("Though the regulation
has been reworded, it is clear to the Court that a plan's failure
to make a benefits determination . . . still constitutes a
constructive denial . . . .").

In both the notice of proposed rulemaking and the notice of
final regulation for the November 2000 amendment, however, the
Department of Labor stated that this amendment was important in
order to clarify that the administrative procedures required by
section 2560.503-1 are the minimum necessary to ensure that
claims are given a full and fair administrative review.  The
Department further stated that an administrator's failure to
comply with the regulation's procedural requirements should
deprive its decision of any judicial deference in a later
lawsuit.  *See ERISA Claims Procedure*, 63 Fed. Reg. 48,390, 48,397
(proposed Sept. 9, 1998) (noting Department's view that, when
claims procedure does not comply with regulatory requirements,

"any decision that may have been made by the plan . . . is not entitled to the deference that would be accorded to a decision based upon a full and fair review that comports with the requirements of section 503 of [ERISA]"); *ERISA Claims Procedure*, 65 Fed. Reg. 70,246, 70,255 (Nov. 21, 2000) ("[A] decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference.").

In determining the weight to accord the Department's statements, the Court must first consider whether the statements are entitled to deference under either *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 387 (1984), or *Auer v. Robbins*, 519 U.S. 452 (1997).  *See Gonzales v. Oregon*, 126 S. Ct. 904, 914-15 (2006) (discussing *Chevron* and *Auer* deference).

Under the *Chevron* doctrine, an agency's interpretation of an ambiguous statutory provision may be entitled to deference if Congress has delegated to the agency authority to administer the statute through rules having the force of law and the interpretation in question is an exercise of that authority.  *See Gonzales v. Oregon*, 126 S. Ct. at 914-15 (quoting *United States v. Mead*, 533 U.S. 218, 226-27 (2001)).  Here, Congress has clearly and expressly given the Department of Labor the authority to administer ERISA.  *See* 29 U.S.C. § 1133 ("In accordance with regulations of the Secretary, every employee benefit plan shall .

34

. . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."); *id.* § 1135 ("[T]he Secretary may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter.").  The Department's statements concerning the standard of review, which are in the form of comments accompanying the proposed and final rules, are nevertheless not entitled to *Chevron* deference because those statements do not have the force of law.  *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters--like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law--do not warrant *Chevron*-style deference.").  Although the Department's comments were made in the course of the rulemaking process, nothing in the text of the rule itself purports to prescribe a standard of judicial review.  Thus, *Chevron* deference is unwarranted.  *See Stefansson*, 2005 WL 2277486, at *12 n.18 (Department's statements not entitled to *Chevron* deference); *cf*. *Seger*, 2005 WL 2249905, at *9 (denying *Chevron* deference because Department was not delegated authority "to regulate the scope of the judicial power vested by [ERISA]").

The Department's statements may still be entitled to

deference under *Auer* if the statements can be considered an interpretation of the Department's own ambiguous regulation. *See Gonzales v. Oregon*, 126 S. Ct. at 914 (citing *Auer*, 519 U.S. at 461-63). At issue in *Auer* was the proper interpretation of the Department of Labor's "salary-basis test" for determining whether an employee is exempt from the overtime provisions of the Fair Labor Standards Act. At the request of the Court, the Secretary of Labor provided an *amicus* brief setting forth his interpretation of the salary-basis test. The Court held that because the salary-basis test is "a creature of the Secretary's own regulations," it was required to defer to his interpretation unless it was clearly erroneous or inconsistent with the regulation. *Auer*, 519 U.S. at 461. Unlike *Auer*, however, this case does not involve ambiguity in the terms of a regulation. Rather, the amended section 2560.503-1 simply does not speak to the issue of the standard of review, and, accordingly, *Auer* does not require deference to the Department's position in this case.

Although the Department's position is therefore not entitled to any formal deference, it is nonetheless entitled to judicial respect, but "only to the extent that [it has] the 'power to persuade.'" *Christensen*, 529 U.S. at 587 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Having considered the effect of the November 2000 amendment

36

to section 2560.503-1, the Court is not persuaded that the new version of the regulation requires a rigid rule of *de novo* review in all cases.

It is true that, from a claimant's perspective, there appears to be no functional difference between the "deemed denied" provision of the old regulation and paragraph (l) of the amended regulation.  From a judicial perspective, however, the new regulation somewhat strengthens the argument that administrative decisions that do not comply with the regulation are not entitled to deference.  Under the old regulation, an administrator at least arguably had the discretion to let a benefits appeal lapse, in the knowledge that it would be deemed denied by operation of law.[12]  Under the new regulation, an administrator cannot simply let a claim lapse.  It is obliged to decide the claim within the requisite time period.  If it does not, the claimant may file suit on the ground "that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."  29 C.F.R. § 2560.503-1(l).

Although this change cements the argument that untimely

_____

[12]As noted *supra*, this is how the Second Circuit has characterized the Fifth Circuit's decision in *Moore*.  *See Nichols*, 406 F.3d at 109.

benefits decisions should presumptively be subject to *de novo* review, the Court does not believe that the Fifth Circuit would adopt the Department of Labor's position and apply *de novo* review in all cases.  First, while the amended regulation may foreclose the broad reading that some other circuits have given *Moore*, nothing about the new regulation is inconsistent with idea of looking to the record in each case to determine if deference is warranted notwithstanding the administrator's failure to comply with the regulation.  In addition, the Department's position that a procedural defect should automatically strip an administrator's decision of any deference is not limited to untimely decisions. Rather, it extends to any failure to comply with any provision of section 2560.503-1, however insubstantial.  *See ERISA Claims Procedure*, 65 Fed. Reg. 70,246, 70,255-56 (Nov. 21, 2000) (stating that any departure from required administrative procedures "would effectively deny a claimant access to the administrative review process mandated by the Act" and should entitle a claimant to proceed to court for a full and fair hearing).  The Court does not believe that the Fifth Circuit would adopt such a rigid and mechanical rule, particularly given that the Fifth Circuit recently expressly endorsed the doctrine of substantial compliance under the old regulation.  *See Lacy v. Fulbright & Jaworski Ltd. Liab. P'ship Long Term Disability Plan*,

38

405 F.3d 254, 256–57 (5th Cir. 2005) (applying substantial compliance exception to claim concerning sufficiency of denial notice).  The Court therefore holds that the Fifth Circuit would continue to look to the record to determine whether a claims decision that does not comply with section 2560.503-1 is entitled to any judicial deference.  The Court also predicts that the Fifth Circuit would adopt the exceptions to *de novo* review recognized by other circuits in cases such as *McGarrah*, *Finley*, and *Gatti*.

Applying these principles, the Court concludes that this case falls squarely within the *McGarrah* exception to *de novo* review.  After this Court's October 27, 2004 order requiring that Hartford reinstate Goldman's claim, Hartford diligently reviewed Goldman's claim.  On three separate occasions, Hartford wrote Goldman and informed him that it needed additional information in order to complete its evaluation of his claim.  When Goldman failed to provide that information, Hartford ultimately denied his claim.  After Goldman appealed that decision, and Hartford received the necessary information, Hartford issued a reasoned decision awarding Goldman benefits for a two-year period from September 20, 2001 through September 19, 2003.  In that decision, Hartford set out at length its reasons for denying Goldman's claim for benefits after September 19, 2003.  Goldman then filed

a second appeal, but he did not provide with that appeal any new or additional information for Hartford to consider.

It is no doubt true that the administrative process broke down at this point and that Hartford has failed to provide any real explanation of why it never decided Goldman's July 26, 2005 appeal, or, for that matter, why a second level of administrative appeal was even appropriate in this case.  Notwithstanding these failures, however, this is not a case in which the fiduciary's failure to abide by the regulatory requirements of section 2560.503-1 creates concern about the overall adequacy of the decision-making process.  *See McGarrah*, 234 F.3d at 1031.  The Court is not presented with a situation in which the administrator has simply failed to issue any reasoned decision or has failed to consider additional evidence provided by the claimant.  To the contrary, Hartford has generated an 1800 page administrative record on Goldman's claims, and Hartford's July 20, 2005 decision reflects that Hartford considered the very evidence that Goldman argues establishes his entitlement to benefits.  (*See* Admin. Rec. at H-1642).  Although these facts do not excuse Hartford's sheer failure to dispose of Goldman's second appeal, the Court finds that they show that it is appropriate to review Hartford's denial of Goldman's claim under an abuse of discretion standard.

40

**D.   Analysis**

As to the merits of Goldman's motion, Goldman can prevail on his motion for summary judgment only if he establishes that no issue of material fact exists as to whether Hartford abused its discretion in denying him benefits after September 19, 2003.[13] Under the abuse of discretion standard, a court looks to whether the administrator's factual finding was arbitrary and capricious. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999).  The Court will uphold the administrator's finding under this standard "if it is supported by substantial evidence."  *Id.* at 215 ("A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'") (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828-29 (5th Cir. 1996)).  In reviewing

---

[13]Although the distinction between an administrator's findings of fact and its interpretations of plan terms is not determinative of the standard of review in this case, the Court notes that Hartford's determination that Goldman's condition does not meet the definition of disability under the plan after September 19, 2003 is a determination of fact.  *See Chapman v. Prudential Life Ins. Co. of Am.*, 267 F. Supp. 2d 569, 576 (E.D. La. 2003) ("A factual determination usually consists of an administrator's finding that a claimant's condition meets a definition in the policy. . . .  [A] challenge to plan interpretation usually consists of the plan administrator's interpretation of a plan term.").

41

Hartford's decision, the Court is limited to the record that was available to Hartford.  *Id.* (citing *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 639 (5th Cir. 1992)).

Goldman has wholly failed to satisfy his burden on this motion.  The thrust of Goldman's argument is that Hartford abused its discretion in denying him benefits after September 19, 2003 because one of Goldman's physicians, Dr. John McCain, has repeatedly reported that he considers Goldman totally disabled, most recently in a letter dated January 24, 2005.  Goldman asserts that this evidence was provided to Hartford and establishes his entitlement to continued benefits.  Goldman completely fails to acknowledge, however, that Hartford's July 20, 2005 decision on his claim expressly stated that Hartford had taken Dr. McCain's assessments into account.  The decision states, in pertinent part:

> The medical evidence contained in Mr. Goldman's file was forwarded to University Disability Consortium for referral to an independent physician for review.  In a 6/29/05 report Barry Turner, MD states, "My telephone conversation with Pain Management specialist, Dr. McCain, revealed that there was no more he could do for [Goldman] and he has not seen him in approximately seven to eight months.  He stated that he had opined that he was incapable of working at all and totally disabled because he felt he needed to lie down during the day.  However, upon further questioning, Dr. McCain stated that he would go along with the functional

> capacity evaluation recommendation in August
> of 2002 that [Goldman] was capable of
> essentially light duty work.

(Admin. Rec. at H-1642; *see also* Admin. Rec. at H-1656, H-1704-H-1706).  To date, Goldman has made no attempt to dispute or contradict Hartford's characterization of Dr. McCain's change of position, either in connection with his administrative appeal or before this Court.

Moreover, even without considering Dr. McCain's apparent concession that Goldman was capable of light-duty work, the administrative record contains ample evidence to support Hartford's determination that Goldman did not satisfy the definition of disability after September 19, 2003.  Hartford had Goldman's file reviewed by an independent physician, Dr. Barry Turner, who reviewed Goldman's medical records, including the notes and recommendations of numerous physicians who had seen Goldman, MRI scans from both before and after Goldman's May 2001 back surgery, a cervical CT study conducted in February 2002, and a functional capacity evaluation conducted in June 2002.  (*See* Admin. Rec. at H-1700-H-1705).  Based on his consideration of this evidence, Dr. Turner concluded that, in his opinion, after September 19, 2001, Goldman's "only [employment] restriction should be no lifting greater than 20 [pounds] occasionally." (*See* Admin. Rec. at H-1706, H-1642-H-1643; Rec. Doc. 158 Ex. 2).

43

Dr. Turner noted that his conclusion was consistent with the June 2002 assessment of Dr. Kinnard, who also concluded that Goldman was capable of light work. (*See* Admin. Rec. at H-1642, H-1704).

Based on Dr. Turner's review of Goldman's medical records and an employability analysis conducted in June 2005, Hartford concluded that the evidence before it established that Goldman was able to perform light work and did not qualify as disabled under the plan after September 19, 2003. (*See* Rec. Doc. 158 Ex. 2, at 5). The Court finds that this evidence is sufficient to support Hartford's decision under the abuse of discretion standard. *See Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601-03 (5th Cir. 1994) (upholding, under abuse of discretion standard, administrator's decision to deny claim when administrator based decision on independent evaluation of medical records, despite conflicting conclusions of plaintiff's physicians).

### E.   Attorneys' Fees

As Goldman has failed to establish his entitlement to summary judgment, the Court finds that the factors articulated in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980), do not favor an award of fees. Accordingly, the Court denies Goldman's request for fees and costs. *See Lain v.*

44

*UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 343, 347-48 (5th Cir. 2002) (noting discretionary nature of fee award under ERISA).

**IV.   CONCLUSION**

For the reasons stated above, the Court DENIES Hartford's motion to strike and its request for sanctions.  The Court also DENIES Goldman's motion for summary judgment.

New Orleans, Louisiana, this <u>23rd</u> day of February, 2006.

*Sarah Vance*
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE